STATE ex rel. COM'RS of LAND OFFICE v. SANDERS et al.

No. 31815. April 2, 1946.

*167 P. 2d 915.*

Everett H. Welborn and W. E. Rice, both of Oklahoma City, for plaintiff in error.

Z. I. J. Holt, of Tulsa, and F. B. Righter, of Broken Bow, for defendants in error.

GIBSON, C. J. This is an appeal from an order of the district court of Tulsa county. The order directs that records of the court be made to show satisfaction of a judgment rendered in favor of the State ex rel. Commissioners of the Land Office and against defendants in error.

On January 17, 1938, plaintiff in error, as plaintiff, instituted an action in the district court of Tulsa county for recovery of judgment on note in the principal amount of $6,000, providing for interest at the rate of 5% before maturity and 10% thereafter, foreclosure of mortgage on real estate securing the indebtedness and appointment of a receiver. Defendants therein were Lutie H. Sanders, H. L. Hollingsworth, and Ruth Hollingsworth, makers of said note and mortgage, J. H. Cowan, S. H. Cowan, and M. L. Kirk, grantees immediate, mediate, and remote, respectively, and who, severally, assumed payment of said indebtedness, and W. L. Kirk, husband of and jointly interested and obligated with said M. L. Kirk.

Defendants Lutie H. Sanders, H. L. Hollingsworth, and Ruth Hollingsworth filed answer and cross-petition which recited the successive transfers of the mortgaged premises and the assumption of payment by the grantees and pleaded payment made by grantees, and prayed that, in event any amount of said indebtedness remained unpaid, the mortgaged premises be sold and proceeds applied before recourse is had to answering defendants, and that they have judgment against said grantees for any deficiency.

On October 12, 1938, eight days before the judgment, plaintiff and answering defendants entered into a written stipulation which, omitting the caption which reflected the style of the action, is as follows:

"Stipulation

"Know All Men by These Presents:

"Whereas, plaintiff herein has been offered the difference in the appraised value of the land involved in this action and the judgment which will be entered herein, and

"Whereas, the defendants, Lutie H. Sanders, H. L. Hollingsworth and Ruth Hollingsworth, and each of them, have agreed to pay said consideration in the sum of $1,000 to plaintiff in consideration of plaintiff bidding within one thousand dollars of the judgment rendered in said action and the further consideration of a judgment with interest at not to exceed five per cent upon said judgment.

"It is, Therefore agreed by and between the parties hereto:

"1. That plaintiff will bid to within one thousand dollars of the judgment at the sheriff's sale of this land under special execution and plaintiff agrees not to take a judgment at an interest rate to exceed five per cent.

"2. The defendants Lutie Sanders, H. L. Hollingsworth and Ruth Hollings-

worth agree to pay as a consideration for the above the sum of $1,000 to said plaintiff upon the execution of this instrument.

"(Signed) Orlando F. Sweet
"William L. Peterson
"Attorneys for Plaintiff.
"Lutie H. Sanders,
"H. L. Hollingsworth,
"Ruth Hollingsworth,
"Defendants."

And, at the same time, in pursuance of the terms of the stipulation, defendants paid to plaintiff the sum of $1,000, and received official receipt carrying notation "Part Princ." issued therefor.

The stipulation was not filed in said cause nor was it called to the attention of the court when judgment was rendered therein.

On October 20, 1938, judgment was rendered in the sum of $7,145.45 with interest at the rate of 5% from date of judgment, $500 for attorney fees, $6 abstract fee, aggregating $7,651.45, and costs accrued and accruing, foreclosure of mortgage and sale if not redeemed within six months, and awarding the answering defendants judgment against said M. L. Kirk and W. L. Kirk for any deficiency remaining after applying proceeds of sale.

Upon sale, had on October 19, 1939, the state became purchaser of mortgaged premises at price of $7,354.05, which was credited upon the judgment. At the time of the sale the accrued interest on the judgment amounted to $304.71, which together with principal judgment, and that for attorney's fee and abstract fee, aggregated $8,005.74, exclusive of costs, thus reflecting of record a deficiency in payment of $651.69. It is by reason of this deficiency defendants filed motion resulting in the order of court appealed from.

In the order of sale there is recited:

"Said plaintiff . . . recovered a judgment . . . for the sum of $7,145.45, with interest thereon at the rate of five per centum per annum from the 20th day of October, 1938, less $1,000 paid on principal October 12, 1938, and an attorney's fee of $500.00 and $_____ costs of this action."

And a recital of like import appears in notice of sheriff's sale and in sheriff's deed to plaintiff purchaser.

On December 30, 1939, the receiver, who had been appointed prior to the judgment, made his final report reflecting a fund in hand of $375. On consideration thereof the court directed the receiver to pay the costs of the action in the sum of $63.35, and further directed as follows:

"It is Further ordered, adjudged, and decreed by the court that the balance of the deficiency judgment due plaintiff in the sum of $1,000 has been paid by said defendants and cross-petitioners; that after crediting same with said sum of $311.65 to be received from the receiver, there will be a balance of $688.35 due on said deficiency judgment, and said sum is hereby fixed and adjudged to be the balance due on said deficiency judgment in favor of the defendants and cross-petitioners Lutie H. Sanders, H. L. Hollingsworth, and Ruth Hollingsworth against the defendants, W. L. Kirk and M. L. Kirk (otherwise known as Mary L. Kirk) for all of which, together with the costs hereafter to accrue herein, let execution issue."

On hearing said motion on November 2, 1943, the court in its findings emphasized the effect of the quoted language of the order of sale which is referred to as "gotten out by plaintiff," and that contained in notice of sale at which plaintiff purchased, and after finding that said judgment had been paid in full, found generally as follows:

"That the stipulation which was signed by the parties hereto at the time said one thousand dollars was paid to the plaintiff is not altogether clear, yet that by its terms and from the evidence introduced at this hearing, there can be no other reasonable construction of said stipulation than that the one thousand dollars was paid to the plaintiff to insure a bid on the property sufficient to leave no deficiency judgment against the defendants who paid the same; to

all of which findings the plaintiff excepts."

Concerning the recitals in order of sale, notice of sale and deed, plaintiff in error says:

"The plaintiff must admit that the shadow cast by the contexts of these instruments springboards the assumption that the judgment in the sum of $7,145.45 rendered on the 20th day of October, 1938, was subject to a credit of the payment made by the defendants in the sum of $1,000 on the 12th day of October, 1938. Such assumption fades in light of the fact that credit was given for the $1,000 payment on the day it was paid before judgment, which judgment was calculated on the basis of such payment. . . .

"No attempt will be made to explain away the use of the words 'unless $1,000 paid on principal October 12, 1938,' as they appear in these instruments. Only the mantle of the charity of a confused mind can cover such inanity."

The substance of plaintiff in error's contention appears to be that the $1,000 payment made on October 12th was treated as a credit upon the principal of the note, thus reducing the amount thereof to $5,000, which amount, with interest at 5% to date of the judgment, equaled $7,145.45, the amount for which judgment was rendered; that the judgment so rendered said nothing concerning a credit thereon of $1,000 as indicated in order of sale, and such order of sale, being ministerial, cannot affect the amount disclosed in the judgment. And it is further urged that there is no legal authority for attorneys representing plaintiff to compromise its rights, and that "therefore no consideration of the stipulation agreement, interpreted as a settlement, can be employed in the determination of this cause," and that "the plaintiff as judgment creditor has not received payment of the foreclosure judgment or any equivalent thereof, and the obligation of said judgment has not been otherwise discharged."

If it were true that the effect of the order satisfying the judgment of record is to discharge an unsatisfied obligation, such order would be erroneous and the stipulation could afford no justification therefor, but there is no compromise here of an indebtedness or satisfaction of an obligation without payment.

The question here involved presents itself to this court as one to be considered in the light of the following equitable principle declared in Pomeroy, Equity Jur. (2d Ed.) § 378, recognized and applied in Collier v. Bartlett, 71 Okla. 133, 175 P. 247:

"Equity will not permit a mere form to conceal the real position and substantial rights of parties. Equity always attempts to get at the substance of things, and to ascertain, uphold, and enforce rights and duties which spring from the real relations of parties. It will never suffer the mere appearance and external form to conceal the true purposes, objects, and consequences of a transaction."

At the time of the stipulation, the petition of plaintiff on file reflected, according to the finding of the court, as unpaid and past due the principal indebtedness of $6,000, and four interest coupons in the sum of $150 each, which amounts, together with 10% interest on said principal amount since the due date, aggregated $9,768.33, to which is to be added $600 attorney's fee, same being 10% of the unpaid principal as provided in the note, making a grand total of $10,368.33. Assuming, by reason of the stipulation, the recoverable indebtedness in contemplation of the parties thereto was to be computed on the basis of 5% rather than the alleged 10%, the amount thereof at time of the sale on the basis $6,000 principal would have been in excess of $9,005.74 since, as we have seen, after reduction of the principal to $5,000 by crediting the $1,000 thereon, the judgment at the time of the sale amounted to $8,005.74. To satisfy this recoverable indebtedness by the payment of $1,000 and a bid for the land within $1,000 of the amount of judgment would have necessitated

a bid substantially in excess of $8,000, if there were to be no deficiency.

The stipulation contains no directions as to the method to be pursued, but to hold that it contemplated a credit of the $1,000 upon the indebtedness, previous to judgment, is directly contrary to the expressed purpose thereof. The defendants signing the stipulation were seeking to accomplish a payment of the indebtedness without further cost to them than the $1,000. And, having demanded in their pleading that the mortgaged premises be subjected to sale before recourse against them, sought by the stipulation to insure that the proceeds of the sale would be ample therefor.

We think it is evident, as held by the trial court, that the purpose of the agreement was to insure a bid upon the property which would be sufficient to leave no deficiency. No question is raised as to the authority of those acting for plaintiff, who were conversant with the value of the property and the amount of the indebtedness, to determine the amount the plaintiff might properly offer to purchase the premises, or to stipulate therefor in order to obtain payment of the amount representing the difference between the value of the land and the indebtedness. And we see no reason why same may not be done.

In the instant case same was done, and, the contract being legal, the plaintiff, having accepted the consideration therefor, was in duty bound to perform.

If in the instant case the premises had been purchased by another at the price at which sold and by reason thereof the plaintiff did not obtain full payment of its judgment, the question here would be quite different. But since the plaintiff became the purchaser and thereby received the land, the value of which together with the $1,000 theretofore paid equaled the amount of the indebtedness, we hold there was no deficiency and the trial court correctly ordered satisfaction of the judgment.

Judgment affirmed.

HURST, V.C.J., and OSBORN, BAYLESS, WELCH, CORN, and DAVISON, JJ., concur. RILEY and ARNOLD, JJ., dissent.

RILEY, J. (dissenting). I am unable to agree with the majority opinion herein. This is a proceeding in equity wherein defendants in error seek a decree declaring a deficiency judgment, appearing against them in the district court, satisfied of record. I agree that the question presented is one to be considered in the light of the equitable principle as stated in the majority opinion:

"Equity will not permit a mere form to conceal the real position and substantial rights of parties. Equity always attempts to get at the substance of things, and to ascertain, uphold, and enforce rights and duties which spring from the real relations of parties. It will never suffer the mere appearance and external form to conceal the true purposes, objects, and consequences of a transaction."

The record clearly shows that defendants in error were indebted to the State School Land Commission on a promissory note in the principal sum of $6,000 and four interest coupon notes in the amount of $150 each, which together with interest computed on the basis of 5%, rather than the contract rate of 10%, amounted, at the date of the judgment, to at least $8,145.45. The principal note provided for an attorney's fee in the sum of $600.

On or about October 12, 1938, the cause was about to be brought to trial. There appears to have been some contention about whether the interest was to be charged at the contract rate of 10% or at the statutory rate of 5% fixed by the Legislature after the execution of the notes involved. If interest was to be computed at the contract rate, then the amount due for principal and interest was in excess of $10,000. It was apparent that in either event the value of the land mortgaged to secure the indebtedness was far less

than the amount due. Defendants in error, in an effort to reduce the amount of the possible deficiency judgment, were anxious to have the interest computed at 5%.

About twelve days before judgment was entered, the plaintiff and defendants in error herein entered into the stipulation set forth in the majority opinion. The first paragraph recites:

"Whereas, plaintiff herein has been offered the difference in the appraised value of the land involved in this action and the judgment which will be entered herein."

Clearly the parties must have then had in mind a contemplated judgment of not less than $8,145.45, for that was the least that could be due at the lowest possible rate of interest.

The stipulation next recites that the defendants Lutie H. Sanders, H. L., and Ruth Hollingsworth had agreed to pay said consideration in the sum of $1,000 in consideration of plaintiff's bidding within $1,000 of the judgment to be rendered, and the further consideration that a judgment with interest at not to exceed 5% would be taken. Again, the parties must have had in mind a contemplated judgment of not less than $8,145.45 if said sum of $1,000 was not paid.

It was then agreed that plaintiff would bid to within $1,000 of the judgment, at the sheriff's sale of the land under special execution and that plaintiff would not take a judgment at an interest rate to exceed 5%. Defendants then agreed to pay, as a consideration for the above (that is, the promise to bid within $1,000 of the amount of the judgment to be entered with interest at not to exceed 5%), the said sum of $1,000. The $1,000 was paid on October 12, 1938, and it appears that the parties agreed that said sum of $1,000 should be credited upon the principal note of $6,000 instead of upon the accrued interest. Defendants were not agreeing to pay, and did not pay, any new consideration whatever. They were only agreeing to pay, and did pay, a part, and only a part, of the debt they owed to plaintiff. The record clearly shows that the $1,000 so paid was in fact credited upon the principal note. This is shown by the fact that the note called for an attorney's fee of 10%, which, except for the credit of the $1,000, would have been $600. Instead of fixing the attorney's fee at $600, the judgment fixed it at $500. This clearly indicates that the court must have taken into consideration the payment of the $1,000 at the time judgment was entered.

Furthermore, the amount of the judgment entered was only $7,145.45, which was $1,000 less than the smallest amount that could be due unless defendants were given credit for the $1,000 so paid. When the order of sale was issued it recited that plaintiff had secured judgment in the sum of $7,-145.45 with interest thereon at 5% from October 20, 1938, less $1,000 paid on principal October 12, 1938, and an attorney's fee of $500. This makes it appear that the $1,000 had been paid and credited on the judgment theretofore entered so as to reduce the amount unpaid from $7,145.45 to $6,145.45, with accrued interest, $500 attorney's fee, and costs. This recital was also reflected in the notice of sheriff's sale and the sheriff's deed.

All the parties apparently assumed that the judgment rendered on October 20, 1938, in the sum of $7,145.45 was subject to a credit for the $1,000 paid by defendants in error herein on October 12, 1938. This assumption was erroneous for the reason that defendants in error must have been given credit for that payment when the judgment was entered eight days after it was paid. Taking into consideration the fact that there was no basis for the entry of a judgment in any sum less than $8,-145.45, exclusive of the $1,000 paid, and the further fact that the judgment reduced the attorney's fee from $600 to $500, it is absurd to say that the trial court was not in some manner advised of the payment of the $1,000 and that

it was to be credited on the principal note rather than on the interest.

If the judgment and order of the trial court are to be affirmed, the result must be that by inadvertence or mistake, defendants will have been allowed credit for the $1,000 twice. To permit this to be done violates the very rule of equity quoted in the majority opinion. The judgment as herein affirmed violates the rule of law stated by this court on March 26, 1946, in State v. Schneider, 197 Okla. ——, 168 P. 2d 288, holding that an affirmative agreement by Commissioners of the Land Office with a borrower to settle a debt due the state for less than the amount due the state is void. Is a judgment any less voidable on appeal that has the effect of doing that which may not be done within the ordinary contract rights? I think not, and respectfully dissent.

I am authorized to say Mr. Justice ARNOLD concurs.