**The STATE of Oklahoma, Appellant,**

v.

**Randy GOFORTH and Orren Thompson, Appellees.**

**No. 66675.**

Supreme Court of Oklahoma.

March 7, 1989.

Rehearing Denied May 16, 1989.

Robert H. Macy, Dist. Atty., District No. 7, Winonia Griffin, Asst. Dist. Atty., Oklahoma City, for appellant.

Frank E. Walta, Coleman, Walke & Briggs, Oklahoma City, for appellees.

KAUGER, Justice.

This case of first impression concerns whether a grandfather, who posts bond for his grandson, is entitled to the same statutory protections as a licensed bondsman. We find the Okla. Const., art. 5, § 46 requires the application of 59 O.S.Supp.1984 § 1332,[1] to licensed and unlicensed bondsmen alike.

## FACTS

On November 7, 1985, Orren Thompson/grandfather-appellee, who is not a licensed bail bondsman, posted a $7,000.00 cash bond for the release of Randy Goforth/(grandson-appellee) pending his grandson's arraignment on a second degree burglary charge. The terms of the printed bond form required the grandson to appear on December 16, 1985, at 9:00 a.m. and from day to day to answer the charge against him. On March 4, 1986, the grandson appeared, plead guilty, and was sentenced to ten years in prison. At the grandson's request, sentencing was continued for thirty days. The grandfather was not present when the grandson plead guilty, and he had not agreed to remain on bond during the thirty days before formal sentencing. The grandfather would have been statutorily exonerated from liability at this point, had he been a licensed bondsman. When the grandson failed to appear on April 4, 1986, the bond was ordered forfeited.

On May 2, 1986, the grandfather filed a motion to set aside the forfeiture under the provisions of 59 O.S.Supp.1984 § 1332. The trial court, recognizing that a licensed bondsman would be given notice of the forfeiture and an opportunity to set the forfeiture aside,[2] sustained the grandfather's motion. Finding that 22 O.S.1981 § 1108[3] was flawed, the trial court applied § 1332. Section 1332 gives a bondsman,

---

1. Title 59 O.S.Supp.1984 § 1332(D) provides in pertinent part:
   "... When a defendant does appear before the court as required by law and is convicted of a crime or enters a plea of guilty to a crime, in such event the undertaking and the bondsman and insurer shall forthwith be exonerated from further liability unless approved thereafter, in writing, by said bondsman...."
   This provision was amended in 1988 and provides in pertinent part:
   "... When a defendant does appear before the court as required by law and is sentenced or a deferred sentence is granted as provided for in Section 991c of Title 22 of the Oklahoma Statutes, in such event the undertaking and the bondsman and insurer shall forthwith be exonerated from further liability unless approved thereafter, in writing, by said bondsman...."

2. The grandfather received actual notice that the cash bond had been forfeited when his son-in-law inquired about the return of the money. The grandfather filed his motion to set aside the forfeiture within the prescribed thirty days.

3. The forfeiture of bail statute, 22 O.S.1981 § 1108(A), provides:

   "A. If, without sufficient excuse, the defendant neglects to appear according to the terms or conditions of the recognizance, bond or undertaking, either for hearing, arraignment, trial or judgment, or upon any other occasion when his presence in court or before the magistrate may be lawfully required, or to surrender himself in execution of the judgment, the court must direct the fact to be entered upon its minutes, and the recognizance, bond or undertaking of bail, or the money deposited instead of bail, as the case may be, is and shall be thereupon declared forfeited. But, if at any time before the final adjournment of court the defendant or his bail appear and satisfactorily excuse his neglect, the court may direct the forfeiture to be discharged upon such terms as may be just. After the forfeiture, the district attorney must proceed with all due diligence, by action against the bail upon the instrument so forfeited. If money deposited instead of bail be so forfeited, the clerk of the court or other officer with whom it is deposited, must, immediately after the final adjournment of the court, pay over the money deposited to the county treasurer."
   This statute was amended in 1988, however this provision remained unchanged.

within thirty days after date of notice of forfeiture, the right to have a hearing on whether the forfeiture should be set aside. Urging the inapplicability of the Oklahoma Bail Bond Act, 59 O.S.Supp.1984 § 1301 et seq., which prescribes the rules and regulations for licensed bondsmen to an unlicensed bondsman, the State appealed. The Court of Appeals found that the trial court had abused its discretion in setting aside the forfeiture, and it reversed the trial court. The grandfather sought certiorari.

## THE OKLA. CONST. ART. 5, § 46 REQUIRES THAT THE STATUTORY PROTECTIONS CONCERNING EXONERATION FROM LIABILITY MUST BE APPLIED TO LICENSED AND UNLICENSED BONDSMEN.

The grandfather argues that at the time of these proceedings, pursuant to 59 O.S. Supp. § 1332(D), a bondsman licensed under the Act, was exonerated upon a defendant's plea of guilty. Defendants were not entitled to remain free on bond after a plea of guilty unless the bondsman agreed, in writing, to extend the liability on the bond. The grandfather contends that the only statute applicable to him, 22 O.S.1981 § 1108, does not afford the same protections. The grandfather concludes that the State has an unconstitutional regulatory scheme which creates two classes—licensed bondsmen and unlicensed individuals—who in identical circumstances, are treated differently insofar as the exoneration of the bail bond is concerned.

The State counters that the statute is not unconstitutional because the cash the grandfather posted for the grandson is presumed to be the grandson's. The State also argues that the grandfather is not entitled to the protection afforded licensed bondsmen because he is not regularly engaged in the bail bond business, nor is he subject to the regulatory procedures of the Insurance Commission. The State asserts that an unlicensed bondsman is not entitled to the same privileges as licensed bondsmen because licensees are required to make private disclosures, and to pay fees which private bondsmen are not required to do.

### A.

Cash bail has been subject to statutory regulation since the pre-statehood enactment of Wilson's Statutes in 1903.[4] In *Whiteaker v. State,* 31 Okl. 65, 119 P. 1003, 1005 (1911), the Court discussed the ownership of cash bail. There, the defendant's brother deposited cash bail, and when the defendant failed to appear for trial, the deposit was forfeited. The Court, approving forfeiture of the bond, found that the posting of cash bail by a third party is, for the purposes of the deposit, considered to be owned by the defendant. The rationale for this position is that if the money were deemed to belong to someone other than the defendant, there would be little or no incentive for the defendant to appear in court.

Although other jurisdictions have adopted this principle,[5] it is limited. The reason for the limitation is to prevent the deposit being used to pay the defendant's fine or any other assessment. The money is deemed to be defendant's only for the purposes of assuring his court appearance. Once the reason for deposit has been accomplished by a proper court appearance by the defendant, the depositor of cash bail has a superior right to the return of cash bail even against the defendant.[6] Al-

---

4. The cash bail provision, Wilsons Statutes of Okla. § 5774 (1903), provides:

   "A deposit of the sum of money mentioned in the order admitting to bail is equivalent to bail and upon such deposit the defendant must be discharged from custody."

5. *United States v. Widen,* 38 F.2d 517, 519 (N.D. Ill.1930); *Mundell v. Wells,* 181 Cal. 398, 184 P. 666–67, 7 A.L.R. 383, 387 (1919); *People v. Castro,* 119 Misc.2d 787, 464 N.Y.S.2d 650, 656 (1983); *State v. Grant,* 44 Or.App. 671, 606 P.2d 1166–67 (1980); *State v. Wilson,* 65 Ohio Abs. 422, 115 N.E.2d 193, 196 (1950). See also, Annot., "Right to Apply Cash Bail to Payment of Fine," 92 A.L.R.2d 1084, 1087 (1963).

6. *United States v. Jones,* 607 F.2d 687–88, 58 A.L.R.Fed. 671, 674 (5th Cir.1979); *Bridges v. United States,* 588 F.2d 911–12 (4th Cir.1978); *State v. Gutierrez Barajas,* 153 Ariz. 511, 738 P.2d 786, 788 (Ct.App.1987); *People v. Castro,* see note 5, 464 N.Y.S.2d at p. 657, supra. See

though cash bail is forfeited immediately, forfeiture of a statutory bond requires that notice be sent to the bondsman and opportunity to file a motion to set aside is given.[7] The general statute, 22 O.S.1981 § 1108, discriminated against the grandfather, who posted cash in lieu of bond, because under § 1332, a licensed bondsman was exonerated from liability when the defendant entered a plea of guilty.

### B.

■ The application of bond forfeiture scheme to the grandfather is unconstitutional if we read 22 O.S.1981 § 1108(A) and 59 O.S.Supp.1984 § 1332 separately. It is a well settled rule of statutory construction that a presumption of constitutionality must be applied. If a statute is susceptible of two constructions—one which will uphold the statute, and one which will strike it down—it is our duty to apply constitutional construction.[8]

■ The cardinal objective of statutory construction is the determination of legislative intent.[9] Details are often omitted from legislative enactments which must be

supplied by implication to avoid interminability in the drafting of legislation. In ascertaining and giving effect of the legislative will,[10] inept or incorrect choice of words in a statute will not be construed and applied in a manner which would destroy the real and obvious purpose of the statute.[11] Apparently, the legislature either failed to anticipate that unlicensed persons might post cash bail for another party, or it intended that they be exonerated from liability on the same terms as licensed bondsmen. Here, the problem is not one of language anaylsis because of an unclear norm but rather one of a lacuna, a non-existent norm—a gap in the law.[12]

■ The enactment of any special law allowing any non-uniform regulations of bond forfeiture is forbidden by the Okla. Const., art. 5, § 46.[13] A special law is one which does not have a uniform operation and which applies to less than the whole of a class of persons, entities, or things standing upon the same footing or in substantially the same situation or circumstances.[14] Section 46 prohibits the enactment of any

---

also, Annot., "Right to Apply Cash Bail to Payment of Fine," see note 5, at p. 1093, supra.

7. Title 59 O.S.Supp.1984 § 1332 provides in pertinent part:
   "A. If there is a breach of the undertaking, the court before which the cause is pending shall declare the undertaking and any money, property or securities that have been deposited as bail, forfeited. In the event of the forefeiture of a bail bond the clerk of the trial court shall notify, by mail with return receipt requested, the bondsman, the Insurance Commissioner and if applicable, the insurer, whose risk it is, and keep at least one copy on file.
   B. The bondsman may file with the court, within thirty (30) days from the date of notice, a motion to set aside the order of forfeiture, which motion shall contain the grounds upon which it relies ...."
   This statute was amended in 1988, however these provisions remain substantially the same. See, 22 O.S.1981 § 1108(A), note 3, supra.

8. *Bennett v. State,* 147 Okl. 14, 294 P. 149–50 (1930); *Dickinson v. Perry,* 75 Okl. 25, 181 P. 504, 509 (1919), aff'd, 259 U.S. 548, 42 S.Ct. 524, 66 L.Ed. 1056 (1922).

9. *Oklahoma City News Broadcasters Ass'n v. Nigh,* 683 P.2d 72, 75 (Okla.1984); *Walker v. St.*

*Louis–San Francisco Ry. Co.,* 671 P.2d 672–73 (Okla.1983); *Jackson v. Indep. School Dist. No. 16,* 648 P.2d 26, 29 (Okla.1982).

10. *Maule v. Indep. School Dist. No. 9,* 714 P.2d 198, 203 (Okla.1985); R. Aldisert, "Hard Core Judicial Process Problems Facing Judges in the 80's", p. 34 (1982).

11. *Wooten v. Hall,* 442 P.2d 334, 336 (Okla. 1968); *Bd. of Educ. v. State Bd.,* 201 Okl. 32, 200 P.2d 394, 397 (1948).

12. *Maule v. Indep. School Dist. No. 9,* see note 10, supra.

13. Local and special laws on certain subjects are prohibited by the Okla. Const., art 5, § 46, which provides in pertinent part:
   "The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing: ...
   Remitting fines, penalties and forfeitures, and refunding moneys legally paid into the treasury; ...."

14. *Reynolds v. Porter,* 760 P.2d 816, 822–23 (Okla.1988); *Maule v. Indep. School Dist. No. 9,* see note 10, supra; *Okla. City v. Griffin,* 403 P.2d 463, 465 (Okla.1965); *Fenimore v. State,* 200 Okl. 400, 194 P.2d 852, 854 (1948).

local or special law which permits non-uniform regulation of the remittance of fines, penalties, and forfeitures. The Legislature may not formulate a procedure for remittance of forfeitures other than by a statute which has general application.[15] Exoneration from liability on bail bond based on whether one is licensed or unlicensed, violates the Okla. Const., art. 5, § 46. Therefore, to give effect to the intent of the legislature, the statutory procedures outlined for exonerating licensed bondsmen from liability must also apply to unlicensed bondsmen.

CERTIORARI GRANTED; OPINION OF THE COURT OF APPEALS VACATED; JUDGMENT OF THE TRIAL COURT AFFIRMED.

HARGRAVE, C.J., and HODGES, ALMA WILSON and SUMMERS, JJ., concur.

LAVENDER, J., concurs in result.

OPALA, V.C.J., and SIMMS, J., dissent.

15. See *Reynolds v. Porter*, note 14, supra.