2004 OK 69

Charlene K. BRADSHAW, Petitioner,

v.

OKLAHOMA STATE ELECTION BOARD, Glo Henley, Chairperson, Kenneth Monroe, Vice Chairman, Thomas E. Prince, Member and Tom Cole, Respondents.

No. 100,836.

Supreme Court of Oklahoma.

Aug. 13, 2004.

### ORDER

¶ 1 Original jurisdiction is assumed and a writ of mandamus is hereby issued. The Oklahoma State Election Board is directed to place petitioner's name on the Oklahoma general election ballot as an Independent candidate for the office of United States Representative for the 4th District of Oklahoma. The provisions of 26 O.S. Supp.2004 § 5–105

---

are, by their express terms, uninvocable against candidates for federal offices.

¶2 Glo Henley, Kenneth Monroe and Thomas E. Prince, to the extent that they are named in the caption hereof in their individual capacities, are not proper parties respondent. These individuals are proper parties respondent only in their official capacities as members of the Oklahoma State Election Board.

¶3 Petitioner's request for costs and an attorney's fee is denied. Rule 1.191(j) of the Oklahoma Supreme Court Rules.

¶4 WATT, C.J., OPALA, V.C.J., BOUDREAU and EDMONDSON, JJ. and SIMMS, SJ., concur; HODGES, HARGRAVE and KAUGER, JJ., dissent; LAVENDER, J., not participating; WINCHESTER, J., disqualified.

OPALA, V.C.J., with whom WATT, C.J. and EDMONDSON, J., join, concurring.

¶1 I concur in today's assumption of jurisdiction and in the issued command that the State Election Board place the petitioner's name on the general election ballot as an Independent candidate for the U.S. Congress from District No. 4.

¶2 The question presented by the petitioner's writ quest is whether she is a qualified candidate for the congressional office she seeks. The State Election Board ruled her disqualified by the provisions of 26 O.S. Supp.2004 § 5–105(A),[1] finding that she fails to meet that statute's requirement for an independent office-seeker who must be "a registered voter in . . . [her] party for the six[-]month period immediately preceding the

first day of the filing period prescribed by law."

¶3 The body of public law that governs qualifications of a candidate for public office **from** this State is **entirely statutory.**[2] It may be neither **supplemented** nor **diluted** by the norms of common law injected into its corpus by an agency or by a judicial syringe. One's opportunity to seek a public office must stand unburdened by extra-statutory hurdles. This right is guaranteed and guarded by the Oklahoma Constitution, the State's highest law.

¶4 This case **is not about** the constitutional validity of a restriction the present incumbent seeks to impose on the petitioner's candidacy; rather, it is about whether such restriction does in fact stand imposed by Oklahoma's fundamental law or by one of her statutes.

## I

### THE STATUTE INVOKED BY THE RESPONDENTS IS FACIALLY UNAMBIGUOUS

¶5 The provisions of 26 O.S.Supp.2004 § 5–105(A), the statute on which the respondents rely, are, by their express terms, uninvocable against candidates who seek a federal office. **This is so because federal office-seekers are not included among those to be affected by its provisions.** Where a statute is plain and unambiguous, it will not be subject to judicial construction, but must be given the effect its language dictates.[3]

---

1. The pertinent terms of 26 O.S. Supp.2004 § 5–105(A) are:

   To file as a candidate for nomination by a political party to **any state or county office,** a person must have been a registered voter of that party for the six-month period immediately preceding the first day of the filing period prescribed by law and, under oath, so state. . . . (emphasis added).

2. *McClendon v. Slater,* 1976 OK 112, ¶19, 554 P.2d 774; *Swindall v. State Election Board,* 1934 OK 259, ¶0 syl.1, 168 Okla. 97, 32 P.2d 691.

3. *Blitz U.S.A., Inc. v. Oklahoma Tax Com'n,* 2003 OK 50, ¶14, 75 P.3d 883, 888; *Ross v. Peters,* 1993 OK 8, ¶9, n. 17, 846 P.2d 1107, 1119, n.

17; *TRW/Reda Pump v. Brewington,* 1992 OK 31, ¶5, 829 P.2d 15, 20; *Forston v. Heisler,* 1961 OK 198, ¶11, 363 P.2d 949, 951. Only where the intent cannot be ascertained from a statute's text, as it occurs when ambiguity or conflict (with other statutes) is shown to exist, may rules of statutory construction be employed. *Blitz, supra,* at ¶14, at 888; *Cooper v. State ex rel. Dep't. of Public Safety,* 1996 OK 49, ¶10, 917 P.2d 466, 468; *TXO Production Corp. v. Okla. Corp. Comm'n,* 1992 OK 39, ¶7, 829 P.2d 964, 969; *Cox v. Dawson,* 1996 OK 11, ¶6, 911 P.2d 272, 276.

## II

### A LONG–FOLLOWED ADMINISTRATIVE CONSTRUCTION IS NOT BINDING ON THIS COURT WHEN IT IS PLACED BY AN AGENCY UPON AN UNAMBIGUOUS STATUTE

¶ 6 Administrative construction cannot override the plain language of a statute.[4] Where a statute is neither ambiguous nor of doubtful meaning, the rule that weight is to be given to an agency construction in determining the effect of the statute [5] will not be applied.

## III

### NEITHER AN AGENCY NOR THIS COURT MAY BURDEN A FEDERAL OFFICE SEEKER WITH QUALIFICATIONS NOT IMPOSED BY FEDERAL OR STATE STATUTORY LAW

¶ 7 This case is not about the constitutional validity of the qualification that the respondents seek to inject but rather whether that very qualification is in fact imposed by state law. Neither an agency nor this court can foist upon a candidate qualifications for office that are not prescribed by written law. No voting- or election-related issue may be resolved by invoking a norm of unwritten law.[6]

In short, there is no common law to aid the court in disposing of the contested issue here. The law's command that courts may not inject common-law solutions in resolving a candidate's qualifications for public office is persuasively informed by Oklahoma's firm constitutional commitment to the principle of providing unimpeded access for filing to those who desire to seek public office by election.[7] In sum, one who seeks public office is entitled to file as a candidate for election unless it clearly appear that one fails to meet a qualification prescribed for that office by the **"written law"**—Oklahoma's constitution or one of her legislative enactments.[8]

## IV

### SUMMARY

¶ 8 I concur in today's assumption of original jurisdiction and in the issued command that the State Election Board place petitioner's name on the general election ballot as an Independent candidate for the U.S. Congress from District No. 4.

KAUGER, J. dissenting:

¶ 1 The issue presented is not whether any qualified individual should have the right to file for office or whether that right

---

4. This court is not bound to follow administrative construction of an unambiguous statute. *Neer v. State ex rel. Oklahoma Tax Com'n*, 1999 OK 41, ¶ 15, 982 P.2d 1071, 1078; *City of Tulsa v. State ex rel. Public Employees Relations Bd.*, 1998 OK 92, ¶ 14, 967 P.2d 1214, 1220; *C.H. Leavell & Co. v. Oklahoma Tax Com'n*, 1968 OK 127, 450 P.2d 211, 215; *State v. Schneider*, 1946 OK 103, 197 Okla. 57, 168 P.2d 288, 291–92.

5. An agency's longstanding construction of an ambiguous or uncertain statute will not be disturbed without cogent reason. *Schulte Oil Co., Inc. v. Oklahoma Tax Com'n*, 1994 OK 103, 882 P.2d 65, 68; *Oral Roberts University v. Oklahoma Tax Commission*, 1985 OK 97, 714 P.2d 1013, 1015.

6. *Coleman v. Sequoyah County Election Bd.*, 1988 OK 96, 762 P.2d 935, 936; *Wood v. Lydick*, 1974 OK 75, 523 P.2d 1082, 1084; *Hines v. Winters*, 1957 OK 334, 320 P.2d 1114, 1117.

7. The terms of Art. 2 § 4, Okl. Const., provide: No power, civil or military, shall ever interfere to prevent the **free** exercise of the right of suffrage by those entitled to such right. (emphasis added).

The pertinent terms of Art. 3 § 5, Okl. Const., are:
"All elections shall be **free and equal.** No power, civil or military, shall ever interfere to prevent the **free** exercise of the right of suffrage...."
(emphasis added).
This principle is often expressed as the people's right to "free and equal" elections. The phrase means that one who is entitled by the State's **written law** to file for office must receive the government's recognition as a legally qualified candidate. *Simpson v. Dixon*, 1993 OK 71, ¶ 15, 853 P.2d 176, 183–84; *McCarthy v. Slater*, 1976 OK 100, 553 P.2d 489, 490; *Sparks v. State Election Board*, 1964 OK 114, 392 P.2d 711, 712 syl. 1; *see also Jackson v. Maley*, 1991 OK 7, ¶ 8, 806 P.2d 610, 623–24 (Opala, C.J., dissenting); *Asher v. Arnett*, 280 Ky. 347, 132 S.W.2d 772, 775–776 (App.1939).

8. *Freeman v. State Election Board*, 1998 OK 107, ¶ 9, 969 P.2d 982, 985; *Burns v. Slater*, 1974 OK 139, ¶ 8, 559 P.2d 428, 429.

will be protected by this Court. There is no question that candidates are entitled to all constitutional and statutory protections. Nevertheless, public policy concerning election regulation is expressed in the statutes and is mandatory, controlling and applicable to all political parties and nonpartisan candidates alike.[1] It exists to protect the electorate and to ensure disclosure of the political positions and qualifications of candidates. Undoubtedly, the petitioner could have filed for election as a member of the party with which she is registered and aligned. Nevertheless, to allow her to file as an independent when she is a member of a political party with an espoused party platform with which she presumably agrees, if not fraudulent, would at the least be misleading and confusing. Voters are entitled to know for whom and for what they are casting their ballots.

¶ 2 The real question involves whether voters should be subjected to a member of a political party—disguised as an independent—in order to get on the ballot when our Constitution requires a mandatory primary system or whether a candidate may deign to dodge the bullet of the primary and participate in the general election under questionable pretenses? If we allow such a result, we undermine the Legislature's authority to detect and prevent election fraud by minimizing differences, leaving the public without an opportunity to make choices on the issues. Instead, we would force them to make distinctions on personality or other matters even less important to public policy. In requiring an independent candidate not to have been affiliated with a political party for six months before the primary, the Oklahoma Legislature has expressed a general state public policy aimed at maintaining the integrity of the ballot[2] and preventing chaos in the electoral process. This Court should do the same.

¶ 3 The Oklahoma Constitution art. 3, § 3[3] provides that the Legislature may enact laws for a mandatory primary system in **all elections for federal, state, county and municipal offices.** It also mandates that the Legislature enact laws whereby citizens, by petition, may place names of independent, nonpartisan candidates for office, including the office of presidential electors, on the ballot.

¶ 4 The Oklahoma statutes were enacted in accordance with the provisions of art. 3, § 3. Title 26 O.S.2001 § 6–101, *et seq.* delineates how candidates may be placed on the ballot. Pursuant to 26 O.S.2001 § 5–102,[4] state and federal candidates must file declarations of candidacy with the Secretary of the State Election Board.

¶ 5 Title 25 O.S.2001 § 5–105[5] requires a

---

1. *Craig v. Bond,* 1932 OK 697, ¶ 31, 160 Okla. 34, 15 P.2d 1014.

2. *Storer v. Brown,* 415 U.S. 724, 733–34, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974), *rehearing denied,* 417 U.S. 926, 94 S.Ct. 2635, 41 L.Ed.2d 230 (1974).

3. The Okla. Const. art. 3, § 3 provides:
   "The Legislature may enact laws providing for a mandatory primary system which shall provide for the nomination of all candidates in all elections for federal, state, county and municipal offices, for all political parties, except for the office of Presidential Elector, the candidates for which shall be nominated by the recognized political parties at their conventions. The Legislature also shall enact laws providing that citizens may, by petition, place on the ballot the names of independent, nonpartisan candidates for office, including the office of Presidential Elector."

4. Title 5 O.S.2001 § 5–102 provides:
   "Candidates for United States Senator, United States Representative, state officer, State Senator, State Representative, district judge, associate district judge and district attorney shall file Declarations of Candidacy with the Secretary of the State Election Board."

5. Title 5 O.S.2001 § 5–105 provides:
   "A. To file as a candidate for nomination by a political party to any state or county office, a person must have been a registered voter of that party for the six-month period immediately preceding the first day of the filing period prescribed by law and, under oath, so state. Provided, the requirement shall not apply to a candidate for the nomination of a political party which attains recognition less than six (6) months preceding the first day of the filing period required by law. However, the candidate shall be required to have registered with the newly recognized party within fifteen (15) days after such party recognition.
   B. To file as an independent candidate for any state or county office, a person must have been registered to vote as an independent for the six-month period immediately preceding the first day of the filing period prescribed by law and, under oath, so state."

candidate filing as an independent for any state or county office to have been registered to vote as an independent for the six-month period preceding the first day of the filing period. There is an apparent lacuna—a gap in the law [6]—in 25 O.S.2001 § 5–105 insofar as federal offices are concerned. However, when read with § 5–102 and art. 3, § 3 which set forth the way candidates must file to be placed on the ballot, it is clear that the language of 25 O.S.2001 § 5–105 was not intended to be confined to state and county offices, but encompasses federal candidates as well.

¶ 6 The United States Supreme Court explained in *McPherson v. Blacker*, 146 U.S. 1, 13 S.Ct. 3, 7, 36 L.Ed. 869 (1892), that although the federal constitution is implicitly imposed on the Oklahoma scheme, state legislatures have not been deprived of the right to determine methods of effectuating constitutional election processes. The *McPherson* Court stated:

"[The constitution] recognizes that the people act through their representatives in the legislature, and leaves it to the legislature exclusively to define the method of effecting the object."

¶ 7 Art. 3, § 4 of the Oklahoma Constitution [7] does precisely what the United States Supreme Court recognized as a state right in *McPherson*—it affords the Oklahoma Legislature the authority to prescribe the manner and conduct of **all** elections. Furthermore, the same provision places the duty on the legislative body to enact such laws as are necessary to detect election fraud.

¶ 8 In enacting election laws, state legislatures act under the power and the grant of the United States Constitution art. 2, § 1, cl. 2 which provides:

"Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives which the State may be entitled in the Congress . . ."

Oklahoma's Constitution affords the Legislature the right to enact mandatory rules for the conduct of primary elections relating to the nomination of all candidates in all elections for federal, state, county and municipal offices.[8] The Oklahoma Legislature exercised its federal and state constitutional authority when it passed 26 O.S.2001 § 5–105(B) requiring that independent candidates must have been registered to vote as an independent for six months before the first day of the filing period.

¶ 9 Since 1987, it has been necessary for independent candidates to meet the six-month registration requirement imposed by the Oklahoma Legislature in 25 O.S.2001 § 5–105(B).[9] The State Election Board followed the precise procedure applied here in 2002 [10] and in 1996 [11] when it denied federal candidates the right to register as independents because of their failure to meet the six-month registration requirement of 26 O.S.2001 § 5–105(B).[12] Great weight is accorded the expertise of an administrative agency, and this Court presumes that validity attaches to the agency's actions.[13] Fur-

---

6. *Keating v. Edmondson*, 2001 OK 110, ¶ 12, 37 P.3d 882; *City of Oklahoma City v. Oklahoma Tax Comm'n*, 1990 OK 27, ¶ 10, 789 P.2d 1287; *State v. Goforth*, 1989 OK 37, ¶ 9, 772 P.2d 911; R. Aldisert, "Hard Core Judicial Process Problems Facing Judges in the 89's", p. 34 (1982).

7. The Okla. Const. art. 3, § 4 provides:
   "The Legislature shall prescribe the time and manner of holding and conducting all elections, and enact such laws as may be necessary to detect and punish fraud in such elections. The Legislature may provide by law for the registration of electors throughout the state and, when it is so provided, no person shall vote at any election unless he shall have registered according to law."

8. The Okla. Const. art. 3, § 3, see note 3, supra.

9. Title 26 O.S.2001 § 5–105(B), see note 5, supra.

10. Cause No.2002–14, In the Matter of Contest of the Candidacy of Joe Zalar, Jr., for the Office of United States Representative, Fourth District, State of Oklahoma.

11. Cause No. 96–8, In the Matter of the Petition to Contest of Candidacy of Meg Corn for Congress, District 4, State of Oklahoma.

12. Title 26 O.S.2001 § 5–105(B), see note 5, supra.

13. *Tulsa Area Hosp. Council, Inc. v. Oral Roberts Univ.*, 1981 OK 29, ¶ 10, 626 P.2d 316.

thermore, the statute's incorporation in the decennial compilations in 2001 cured any potential procedural defect that might otherwise have invalidated it .[14] Finally, the recodification purged the statute of potential constitutional infirmities.[15]

¶ 10 Statutes regulating primary elections are part of Oklahoma's public policy. Their provisions are mandatory and controlling upon all political parties and nonpartisan candidates alike.[16] I dissent: 1) because the Oklahoma Legislature clearly intended that candidates running as independents should be registered as such for a minimum of six-months before filing for office; 2) in so providing, the Legislature exercised authority under both the Oklahoma and the Federal Constitutions; and 3) the State Election Board, in utilizing its expertise, has applied the requirement consistently, incorporating the statutory requirement of 26 O.S.2001 § 5–105(B) into the election process thus denying any candidate for federal office the right to file as an independent when not so registered; and 4) even if the statute, as originally enacted, contained either procedural or constitutional faults when drafted, its recodification eliminated any such defects. Finally, and perhaps most importantly, requiring a candidate to present the true colors of party affiliation protects the public's right to know and to understand how such a elected representative may proceed on the political issues presented by an elected official.

---

**14.** *Hendrick v. Walters,* 1993 OK 162, ¶ 17, 865 P.2d 1232. See, *Allen v. Retirement Sys.,* 1988 OK 99, ¶ 8, 769 P.2d 1302, 1305.

**15.** *Cox v. Dawson,* 1996 OK 11, ¶ 19, 911 P.2d 272; *Allen v. Retirement Sys.,* see note 14, supra.

**16.** *Craig v. Bond,* see note 1, supra.